**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

JASON MYERS,

              Plaintiff,

vs.

TURSSO COMPANY, INC.,

              Defendant.

No. C 07-3016-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

---

**TABLE OF CONTENTS**

**I. INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**II. LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    *A. Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . . . 14
    *B. Applicability And Elements Of Equitable Estoppel* . . . . . . . . . . . . . 18
    *C. Tursso's Challenges To Each Element* . . . . . . . . . . . . . . . . . . . 19
        *1. Misrepresentation* . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            *a. Arguments of the parties* . . . . . . . . . . . . . . . . . . . 19
                *i. Tursso's argument* . . . . . . . . . . . . . . . . . . . 19
                *ii. Myers's response* . . . . . . . . . . . . . . . . . . . 21
            *b. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
                *i. The court's prior analysis* . . . . . . . . . . . . . . . 23
                *ii. Analysis of the employer's conduct* . . . . . . . . . 25
                *iii. Effect of silence* . . . . . . . . . . . . . . . . . . . 26
                *iv. Effect of additional Handbook provisions* . . . . . 27
                *v. Effect of the FMLA rights poster* . . . . . . . . . . 28
                *vi. Summary* . . . . . . . . . . . . . . . . . . . . . . . . 30
        *2. Reasonable reliance* . . . . . . . . . . . . . . . . . . . . . . . . . 30

|        | *a.*   | *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . | 30 |
|        |        | *i.*   | *Tursso's opening argument* . . . . . . . . . . . . . | 30 |
|        |        | *ii.*  | *Myers's response* . . . . . . . . . . . . . . . . . . . . . | 31 |
|        |        | *iii.* | *Tursso's reply* . . . . . . . . . . . . . . . . . . . . . . | 31 |
|        |        | *iv.*  | *The parties' oral arguments* . . . . . . . . . . . . | 32 |
|        | *b.*   | *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 33 |
|        |        | *i.*   | *The court's prior analysis* . . . . . . . . . . . . . . | 33 |
|        |        | *ii.*  | *Analysis on the present record* . . . . . . . . . . . | 33 |
| *3.*   | *Detrimental reliance* . . . . . . . . . . . . . . . . . . . . . . . | 38 |
|        | *a.*   | *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . | 38 |
|        |        | *i.*   | *Tursso's opening argument* . . . . . . . . . . . . . | 38 |
|        |        | *ii.*  | *Myers's response* . . . . . . . . . . . . . . . . . . . . . | 38 |
|        |        | *iii.* | *Tursso's reply* . . . . . . . . . . . . . . . . . . . . . . | 39 |
|        | *b.*   | *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 40 |

*III.* **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

The court previously held that the plaintiff employee's assertions that the defendant employer had misrepresented his eligibility for FMLA leave, based on statements in an employee handbook, were nothing to sneeze at, but the employer now renews its sternutations at the notion that it could be equitably estopped by any alleged misrepresentations to assert that the employee was ineligible for FMLA leave. Somewhat more specifically, on the employee's pre-discovery motion for summary judgment, the court found that the employee had generated genuine issues of material fact on his claim that his former employer was equitably estopped to assert that he was ineligible for leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654, even if the employee had fallen short of establishing equitable estoppel as a matter of law. *See Myers v. Tursso Company, Inc.*, 496 F. Supp. 2d 986 (N.D. Iowa 2007) (*Myers I*). Now that the

parties have completed discovery, the employer has moved for summary judgment on the employee's FMLA claims on the grounds that, not only is there no dispute that the employer did not have enough employees at the plant where the employee worked to meet the FMLA's employee-numerosity requirement for employees at that plant to be eligible for FMLA leave, *see* 29 U.S.C. § 2611(2)(B)(ii); *see also* 29 C.F.R. § 825.110(a)(3), but there is now no dispute that the employee did not reasonably or detrimentally rely on any supposed misrepresentation by the employer about eligibility for FMLA leave.

## I. INTRODUCTION

### A. Factual Background

The facts relevant to the present motion for summary judgment are now considerably less straight-forward, after discovery, than they were upon the plaintiff's motion for summary judgment, filed before any discovery had been completed. Nevertheless, Tursso contends that key facts are still undisputed and now establish that Tursso is entitled to summary judgment.

Plaintiff Jason Myers was a long-time, full-time employee of defendant Tursso Company, Inc., (Tursso), a commercial printer incorporated and headquartered in St. Paul, Minnesota. For the majority of his career with Tursso, Myers worked as a press operator. Tursso has plants in St. Paul and Fort Dodge, Iowa. It is undisputed that Tursso does not and never has employed 50 or more employees at its Fort Dodge location or within 75 miles of that location, although it does employ more than 50 employees at its St. Paul location. Myers worked at Tursso's Fort Dodge plant.

Tursso provides employees at both of its plants with copies of the same handbook, entitled "Personnel Policies of Tursso Companies, Inc." (Handbook). Plaintiff's Appendix in Support of Motion For Partial Summary Judgment (docket no. 9) (Plaintiff's Partial

Summary Judgment Appendix at 1-21.[1]  Although Tursso points out that the Handbook was prepared in Minnesota, Tursso admits that the Handbook was disseminated by Tursso to its employees in both St. Paul and Fort Dodge.

The Handbook begins with a message from the CEO, Dennis J. Tursso, which states, in part, as follows:

> Our handbook has been assembled to provide you with pertinent company information regarding rules, policies and benefits.  It is important that everyone take the time to read and familiarize themselves with the information contained within this handbook.

Plaintiff's Partial Summary Judgment Appendix at 1.  Tursso points out that the Handbook also states that "[i]t is not meant to cover everything" and that the policies therein can be "changed by Tursso in its sole discretion."  Plaintiff's Partial Summary Judgment Appendix at 1.  Tursso also contends that the following language in the "Introduction" section is relevant:

> The contents of this employee handbook set forth the general personnel procedures under which the company intends to operate.  These policies and procedures may be changed or modified, revoked or suspended by the company at any time.
>
> The policies and procedures described in this manual are not conditions of employment and this manual is not intended to create a contract between Tursso and its employees.  Tursso intends to maintain its "at-will" relationship with its employees.  This means that you are free to terminate your

---

[1]The parties continue to rely on the appendices submitted in support of and resistance to Myers's May 11, 2007, Motion For Partial Summary Judgment (docket no. 9) as part of the record on Tursso's November 29, 2007, Motion For Summary Judgment (docket no. 30).

> employment at any time, for any reason, with or without cause, and that Tursso also retains this same right.

Plaintiff's Partial Summary Judgment Appendix at 2. Myers points out, however, that Tursso has never changed the pertinent language in the Handbook, even if Tursso had the discretion to change the policies described, which Tursso admits. Moreover, nothing in the Handbook expressly differentiates between the policies applicable to employees at Tursso's St. Paul plant and those applicable to employees at its Fort Dodge plant. The Handbook does, however, list separate contact numbers for Fort Dodge and St. Paul where it directs employees "to contact the HR Department about company leave policies" when "a prolonged absence is anticipated." Plaintiff's Partial Summary Judgment Appendix at 3.

Three pages of the Personnel Policies Handbook are devoted to "Leave of Absence—FMLA." Plaintiff's Partial Summary Judgment Appendix at 11-13. This section includes the statement, "Tursso Companies' FMLA policy complies with [the FMLA]." Plaintiff's Partial Summary Judgment Appendix at 11. Among other requirements, this section also states, "Employees eligible for this [FMLA] leave are those who have been employed by the company for at least 12 months [and] have worked at least 1250 hours during the previous 12 month period." Plaintiff's Partial Summary Judgment Appendix at 11. This section of the Handbook does not mention the employee-numerosity requirement for an employer's employees to be eligible for FMLA leave or any other disclaimer of coverage of certain employees at one or the other of Tursso's facilities.

The section of the Handbook regarding FMLA leave also requires notification by an employee to the company of an employee's desire to take FMLA leave and medical certification for such leave, as follows:

<u>Notification</u>

Any employee, who seeks to take such leave, must provide the company with at least 30 days advance notice where the need for the leave is foreseeable. If notice is not provided, and the need for the leave was foreseeable, leave may be delayed up to 30 days. Where unforeseen events occur that require leave under this policy, employees must give notice as soon as practicable. (See Human Resources for request forms.)

Upon receipt and review of employee's request, a "Response to Employee Request for FMLA" form will be presented to requesting employee advising eligibility status.

<u>Medical Certification</u>

The company requires a medical certification from a health care provider to support a leave request to care for an employee's seriously ill family member (spouse, child or parent), or due to a serious health condition, which makes the employee unable to perform the functions of the employee's job. This medical certification must be provided to the company within 15 calendar days after request for leave, unless the need for leave is unforeseen. Leave may be refused until such certification is provided. Under some circumstances, the company may request additional medical certification, at the company's expense, to verify the need for the leave. If the opinions of the first and second health care provider differ, the company may require a third opinion, at the company's expense, from a health care provider mutually agreed upon by employer and employee. If adequate medical certification is not provided, leave may be denied. (See Human Resources for Certification forms.)

Plaintiff's Partial Summary Judgment Appendix at 11-12. After describing benefits under the FMLA and other requirements for FMLA leave, the FMLA leave section of the Handbook concludes with the statement, "Should you have any questions regarding your rights under the Federal Family and Medical Leave Act of 1993 or this policy and its

application to you, please see Human Resources Manager or immediate supervisor." Plaintiff's Partial Summary Judgment Appendix at 12-13. The parties do not dispute that Myers had notice of Tursso's FMLA leave policies from the Handbook. They also do not dispute that he did not make any inquiries about Tursso's FMLA leave policy.

In addition to providing the explanation of its FMLA leave policy in the Handbook, Tursso placed a poster captioned "Your Rights under the Family and Medical Leave Act of 1993" on the employee notices bulletin board in the employees' break room at the Fort Dodge plant. Plaintiff's Appendix at 23-24. Tursso points out that this poster not only describes the FMLA, but specifically states the employee-numerosity requirement for an employer's employees to be eligible for FMLA leave, as follows:

> FMLA requires covered employers to provide up to 12 weeks of unpaid, job-protective leave to "eligible" employees for certain family and medical reasons. Employees are eligible if they have worked for their employer for at least 1 year, and for 1,250 hours over the previous 12 months, *and if there are at least 50 employees within 75 miles*.

Plaintiff's Appendix at 24 (emphasis added). Tursso contends that this FMLA rights poster is the "standard" United States Department of Labor notice. The parties do not dispute that Myers had notice of this poster, nor do they now dispute that Myers knew that there were always less than 50 employees at the Fort Dodge plant and that there were no Tursso locations within 75 miles of the Fort Dodge plant. Indeed, Myers now admits that he read the employee-numerosity requirement on the FMLA rights poster. He also admits that it says that employees of the Fort Dodge plant are not eligible for FMLA leave, but he maintains that he assumed that, because he was ill with a serious health condition, the policy nevertheless covered his situation, based on his observation of leave taken by other employees.

It is undisputed that Tursso grants employees leave in accordance with the FMLA at its St. Paul location, but the parties dispute whether Tursso grants such leave to employees at its Fort Dodge location. Tursso maintains that it does not consider itself a covered employer required to comply with the FMLA at its Fort Dodge location. Nothing in the record indicates that Tursso communicated to employees at its Fort Dodge location that their benefits were any different from those provided to employees at Tursso's St. Paul location, let alone that employees at the Fort Dodge location were not eligible for FMLA leave, despite the reference to FMLA leave in the Handbook and the poster concerning FMLA rights on the employee notices bulletin board.

More specifically, the parties now agree that there was no human resources department at the Fort Dodge plant, so human resources matters at that plant were dealt with by an administrative assistant, Cindy Litwiller. Tursso admits that Ms. Litwiller sought direction from the Human Resources department in St. Paul; that she was never told that the FMLA was not applicable to Fort Dodge; and that she was, in fact, instructed to explain the provisions of the FMLA to Fort Dodge employees and that she even assisted some employees with completing FMLA leave forms. Tursso contends, however, that there is no evidence that Myers ever asked Ms. Litwiller about FMLA leave and that there is no evidence that he knew what kind of leave other employees sought or obtained.

Tursso contends, and Myers admits, that Myers had a long history of attendance problems and that he was warned every year that he needed to improve his attendance. More specifically, Myers admits that he had exhausted all of his vacation and sick time and had unpaid absences in 1999 and every year thereafter until he was terminated. Myers had not sought FMLA leave for any of his prior absences.

The parties agree that Myers had a series of absences in late 2006, because he was suffering from various conditions. These absences began in November, when Myers was

diagnosed with pleurisy. Myers took unpaid absences from November 28, 2006, through December 1, 2006, for his pleurisy, because he had already exhausted all of his vacation and sick time for the year. Myers was then diagnosed with shingles, as well as pleurisy, on December 1, but he nevertheless returned to work on December 4.

Tursso points out that, in an e-mail dated December 1, 2006, from Tom Williamson, the Fort Dodge plant manager, to Michelle Thomas, the administrative manager at Fort Dodge, Mr. Williamson stated, *inter alia*, that Myers "has not responded to these challenges" concerning his absenteeism "and I know [sic] feel termination may be the best alternative." Defendant's Appendix In Support Of Its Motion For Summary Judgment (docket no. 30-3), 34. Notwithstanding this e-mail, Mr. Williamson did not terminate Myers upon Myers's return to work on December 4. Instead, Tursso's management employees, including Mr. Williamson and Ms. Thomas, issued Myers a "corrective action" notice, which stated the following:

> This corrective action is being issued to Jason Myers as a result of his poor attendance. Jason has missed 72 hours of work this calendar year. Poor attendance has been a problem for Jason over the years and Jason has been challenged repeatedly to make improvement.
>
> With the change in staffing within our organization and the increasingly competitive nature of the printing industry, it has become increasingly important that all Tursso employees have solid attendance. Jason's attendance is far below the norm for the Fort Dodge plant and immediate improvement is required.
>
> Future absences will be subject to disciplinary action up to and including suspension and/or termination.

Defendant's Appendix In Support Of Its Motion For Summary Judgment (docket no. 30-3) at 35. Myers admits that he knew that his job was in jeopardy after he received this notice.

After Myers returned to work on December 4, 2006, he suffered further health problems. Those problems caused him to leave work early on December 13, 2006, and prevented him from returning to work until January 8, 2007. More specifically, Myers's doctor sent him to the emergency room on December 14, 2006, because his symptoms had not improved, and he was there diagnosed with and hospitalized for meningitis and encephalitis.[2] Myers was discharged from the hospital on December 29, 2006, but his doctor kept him off work until January 8, 2007. The parties agree that either Myers or his wife kept Tursso informed of his health problems throughout his absences in December 2006 and January 2007. The parties also agree that, if Myers had been eligible for FMLA leave, he would not have exhausted that leave by the time that he attempted to return to work on January 8, 2007. In his deposition, however, Myers admitted that he was not relying on Tursso in any way in making decisions about when to seek medical care or when to return to work; that it would not have been possible for him to return to work any earlier than he did; that he did not know whether there was FMLA coverage for employees at Tursso's Fort Dodge plant at the time of his absence; and that he did not really think about FMLA leave at the time. Defendant's Appendix To Its Motion For Summary Judgment at 13-14 (Myers's Deposition at 60-62) & 10 (Myers's Deposition at 46). Nevertheless, Myers contends that he was relying on the Handbook information concerning absences, which led him to believe that "everything was okay," because he was

_____

[2] Whether or not Myers's condition qualified as a serious health condition under the FMLA is not at issue on Tursso's Motion For Summary Judgment, nor was it an issue on Myers's Motion For Partial Summary Judgment.

hospitalized for an illness. Defendant's Appendix To Its Motion For Summary Judgment at 10 (Myers's deposition at 46).

It is undisputed that Myers did not ask anyone at Tursso about his eligibility for FMLA leave, did not provide Tursso with any notification that he sought to take FMLA leave, did not request FMLA leave, and did not provide any medical certification for his absence prior to or during his absence leading to his discharge on January 8, 2007. It is also undisputed that Tursso never provided Myers with notice of his eligibility status for FMLA leave, because Myers had never made a request for FMLA leave. At the time of his discharge, Myers did not claim that he relied on the reference to FMLA leave in the Handbook or the notice of FMLA rights posted on the employee notices bulletin board. It is also undisputed that no one at Tursso made any representations to Myers that he was eligible to receive FMLA leave for his absence prior to his discharge other than the representations that Myers contends were made in the Personnel Policies Handbook and the notice of FMLA rights posted on the employee notices bulletin board.

On either December 13 or 14, 2006, shortly after Myers's final absence began, Mr. Williamson apparently discussed with an upper management employee in St. Paul whether he could terminate Myers for excessive absenteeism. Tursso contends that Mr. Williamson decided to terminate Myers on December 14, 2006, but that decision was not communicated to Myers or Myers's supervisor until Myers attempted to return to work in January 2007. When Myers attempted to return to work on January 8, 2007, he presented a slip from his doctor stating that he could return to work for half days to start. Myers asserts that he and his doctor anticipated that he would be ready to work full time in about a week. Although Myers was allowed to work a few hours on January 8, 2007, on light duty, he was called into a meeting with Mr. Williamson and Ms. Thomas that day at which he was discharged for excessive absences. This litigation followed.

### B.  Procedural Background

Plaintiff Jason Myers filed a Complaint and Jury Demand (docket no. 1) in this action on February 28, 2007, against defendant Tursso Company, Inc., asserting the following claims:  interference with rights under the FMLA arising from his termination on January 8, 2007; retaliation for taking FMLA leave, again arising from his termination on January 8, 2007; and failure to pay a 3% wage increase from an effective date of February 6, 2006, in violation of IOWA CODE § 91A.8.  Myers prayed for declaratory judgment that Tursso's refusal to restore him to his job as a press operator or an equivalent job violates the FMLA; compensatory damages for the FMLA violation and restoration to his former position or an equivalent job; liquidated damages for the FMLA violation; attorney fees and costs for pursuing the FMLA claim; unpaid wages and liquidated damages on his state-law wage claim; attorney fees and costs for collecting his unpaid wages; and such other relief as the court deems appropriate.  Tursso filed its Answer (docket no. 4) on March 26, 2007, denying Myers's claims.  This matter is currently set for trial to begin on May 5, 2008.

Upon the parties' joint motion, the court dismissed Myers's unpaid wages claim on April 17, 2007, in light of the parties' representation that the unpaid wages at issue had been paid in full.  *See* Order (docket no. 7).  Thereafter, but before any discovery had been completed, Myers filed his May 11, 2007, Motion For Partial Summary Judgment (docket no. 9) seeking a judgment that Tursso is equitably estopped from asserting that it is not a covered employer under the FMLA and, therefore, need not comply with the FMLA.  The court observed in its ruling on Myers's motion that Tursso's response also raised the question of whether the court could grant summary judgment *sua sponte* to Tursso, the non-moving party, if the record revealed no genuine issues of material fact on Myers's motion for summary judgment, but the undisputed facts were against, not in

support of, Myers's contention.  *See Myers I*, 496 F. Supp. 2d at 993-94.  As explained briefly at the beginning of this decision, this court denied summary judgment in Myers's favor, because, based on the record presented at that time, Myers had succeeded only in generating genuine issues of material fact on his contention that Tursso is equitably estopped to assert that it does not have enough employees to be covered by the FMLA. *Id.* at 1000.  Those genuine issues of material fact also precluded the court from entering summary judgment *sua sponte* in Tursso's favor.  Therefore, the court held that, before the jury will be allowed to decide whether or not Myers has proved his FMLA claims, the jury will be required to resolve factual disputes concerning whether Tursso should be equitably estopped to assert the employee-numerosity requirement as a bar to Myers's FMLA claims.  *Id.*

On November 29, 2007, after the completion of discovery, Tursso filed its own Motion For Summary Judgment (docket no. 30), which is now before the court.  In its motion, Tursso contends that Myers cannot establish the elements required to equitably estop Tursso from asserting that Myers is ineligible for FMLA leave.  In addition or in the alternative, Tursso contends that Myers is not entitled to liquidated damages on any FMLA claim as a matter of law, because Tursso acted in good faith and with objectively reasonable grounds for believing that it was in compliance with the FMLA.  After an extension of time to do so, Myers filed his Resistance (docket no. 38) on January 15, 2008.  Tursso then filed a Reply (docket no. 42) in further support of its motion on January 22, 2008.

The court heard oral arguments on Tursso's Motion For Summary Judgment, pursuant to Tursso's request, on February 14, 2008.  At the oral arguments, plaintiff Jason Myers was represented by Blake Parker of the Blake Parker Law Office in Fort Dodge,

Iowa. Defendant Tursso Company, Inc., was represented by Andrew T. Tice, who argued the motion, and Amanda G. Wachuta of Ahlers & Cooney, P.C., in Des Moines, Iowa.

Tursso's Motion For Summary Judgment is now fully submitted.

## II. LEGAL ANALYSIS

### A. Summary Judgment Standards

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1982 (2007); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Any party may move for summary judgment regarding "all or any part" of the claims asserted in a case. FED. R. CIV. P. 56(a), (b) (allowing a claimant to move for summary judgment "at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party," and allowing a defending party to move for summary judgment "at any time"). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Thus, "the substantive law will identify which facts are material."  *Anderson*, 477 U.S. at 248.  Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not.  *Id.*  An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").  Evidence presented by the nonmoving party that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, such as a "scintilla of evidence," *Anderson*, 477 U.S. at 252; *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997), or evidence that is "merely colorable" or "not significantly probative," *Anderson* at 249-50, does not make an issue of material fact genuine.

Thus, a *genuine issue of material fact* is not the "mere existence of some alleged factual dispute between the parties."  *State Auto. Ins. Co. v. Lawrence*, 358 F.3d 982, 985 (8th Cir. 2004).  "'Instead, "the dispute must be outcome determinative under prevailing law."'"  *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) (quoting *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992), in turn quoting *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989)).  In other words, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial."  *Anderson*, 477 U.S. at 248-49.  Essentially, a genuine issue of material fact determination, and thus the availability of summary judgment, is a determination of "whether a proper

jury question [is] presented." *Id.* at 249. A proper jury question is present if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

Procedurally, the moving party does not have to "support its motion with affidavits or other similar materials *negating* the opponent's claim," *Celotex*, 477 U.S. at 323, but the moving party does bear "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Thus, a movant need only demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). Thus, the movant must show the absence of a genuine issue of material fact as it relates to the substantive law, and the nonmovant must show the alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 322; *In re Temporomandibular Joint*, 113 F.3d at 1492.

In considering whether a genuine issue of material fact is present the court must view all the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Mosley*, 415 F.3d at 910. Further, the court must give such party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita*, 475 U.S. at 587-88. However, "because we view the facts in the light most favorable to the non-moving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather than "attempt[ing] to determine the truth of the matter . . . the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

Of course, the facts are not the sole concern of the court; after all, a genuine issue of material fact necessarily depends on the substantive law. *See Holloway*, 884 F.2d at 366 ("The presence of a genuine issue of fact is predicated on the existence of a legal theory which can be considered viable under the nonmoving party's version of the facts. The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."). Moreover, summary judgement is particularly appropriate "where the unresolved issues are primarily legal rather than factual." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996). But even if no genuine issue of material fact is present in a case, summary judgment is not appropriate unless the governing law supports the moving party's position. FED. R. CIV. P. 56(c) (requiring the moving party to also show that it "is entitled to judgment as a matter of law"). Furthermore, "the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252; *see Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998)

17

("'In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law.'" (quoting *Hartnagel*, 953 F.2d at 396)).

The court will apply these standards to Tursso's Motion For Summary Judgment.

### B. Applicability And Elements Of Equitable Estoppel

The FMLA defines an eligible employee as one who has been employed for at least 12 months by the employer with respect to whom leave is granted and for at least 1,250 hours of service with that employer during the previous 12-month period. *See* 29 U.S.C. § 2611. The statute then expressly excludes from the definition of "eligible employee" "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2)(B)(ii); *see also* 29 C.F.R. § 825.110(a)(3) (setting forth the requirement that, to be eligible for FMLA benefits, an employee must work for an employer that employs 50 or more people within 75 miles of the employee's worksite).

In its earlier ruling on Myers's Motion For Partial Summary Judgment, this court found that equitable estoppel is applicable to the employee-numerosity requirement of § 2611(2)(B)(ii), because that requirement is not jurisdictional. *See Myers I*, 496 F. Supp. 2d at 994-96. This court also held that, under federal law, to estop an employer from asserting the employee-numerosity requirement of the FMLA, an employee would have to establish the following elements: (1) the party to be estopped made a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; (2) the other party reasonably relied upon the misrepresentation; and (3) that other party did so to his or her detriment. *Id*. at 996-97 (citing *Kosakow v. New Rochelle Radiology*

*Assocs., P.C.*, 274 F.3d 706, 726 (2d Cir. 2001), and *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 493-94 (8th Cir. 2002)).   Neither party objects to the court's prior conclusion that equitable estoppel is applicable to the employee-numerosity requirement of the FMLA or to the court's formulation of the elements of equitable estoppel in this context.   Therefore, the court will now consider whether Tursso has established beyond dispute that Myers cannot prove the elements of equitable estoppel as he must do for his FMLA claims to go forward.

### C.  Tursso's Challenges To Each Element

In its Motion For Summary Judgment, Tursso asserts that, contrary to the court's conclusion on Myers's Motion For Partial Summary Judgment, Myers cannot, as a matter of law, establish any of the elements of equitable estoppel.   The court will, therefore, consider each element of Myers's equitable estoppel claim in turn.

### 1.     Misrepresentation

#### a.     Arguments of the parties

*i.     Tursso's argument*.  As to the first element of Myers's equitable estoppel claim, misrepresentation, *see Myers I*, 496 F. Supp. 2d at 996-97, Tursso contends that, contrary to the court's ruling on a limited record, the evidence in this case now makes clear that Tursso has not engaged in conduct unmistakably likely to mislead its Fort Dodge employees (including Myers) into believing that they were eligible for leave under the FMLA.  Tursso contends that this standard is a high one, synonymous with fraud.  Tursso contends, further, that the focus is on the employer, not the employee.  Tursso contends that, in finding genuine issues of material fact on this element on Myers's Motion For Partial Summary Judgment, the court relied on statements in the Handbook and Tursso's silence on the question of whether employees at one location were also entitled to benefits

19

that employees at another location were entitled to. Tursso now argues that the court did not recognize several other express limitations on the scope of statements in the Handbook. Specifically, Tursso points out that the Handbook states that "[i]t is not meant to cover everything"; that the policies described therein can be "changed by Tursso in its sole discretion"; that the "policies and procedures may be changed or modified, revoked or suspended by the company at any time"; and that the Handbook "is not intended to create a contract." Tursso contends that these additional statements demonstrate beyond dispute that it did not misrepresent any employee's eligibility for FMLA leave, because they made clear, *inter alia*, that the Handbook was not a complete statement of Tursso's FMLA policy.

Tursso also maintains that it was *not* silent about differing leave policies between St. Paul and Fort Dodge, as the court found on the limited record available for Myers's Motion For Partial Summary Judgment, because the Handbook specifically provides that, "[w]hen calling in and a prolonged absence is anticipated, [employees] should also contact the HR Department about company leave policies," then lists separate company telephone numbers for St. Paul and Fort Dodge. More generally, Tursso contends that silence is not affirmative conduct upon which equitable estoppel can be based in the absence of a duty to speak, and no such duty can be found on the present record.

Tursso contends that, in light of the provisions of the Handbook that it has now cited, and the onerous burden that the plaintiff must meet, comparable to establishing fraud or constructive fraud, it is now clear that, as a matter of law, no reasonable factfinder could conclude that Tursso should unmistakably have understood that its Handbook would cause the plaintiff to change his position in reliance on any statements therein regarding FMLA leave. Indeed, Tursso argues that, because the court found that a factfinder would not be *required* to find that the Handbook provisions previously cited by the court were

likely to mislead an employee of Tursso at the Fort Dodge location into believing that he or she was eligible for FMLA leave, those Handbook provisions were not *unmistakably* likely to mislead.

Tursso also contends that the FMLA rights poster contains no misrepresentation about FMLA rights. Tursso then disputes the court's conclusion that the FMLA rights poster would not eliminate any likelihood that employees would be misled, because Tursso points out that the standard is not whether an employer's conduct eliminates any likelihood that an employee would be misled, but whether an employer took action that is *unmistakably likely to mislead* an employee.

Finally, Tursso notes that the court found that it was not reasonable or equitable to assume that an employee will necessarily know how many employees an employer has within 75 miles of the worksite or to impose on an employee an obligation to investigate whether or not the employee-numerosity requirement was met. Tursso points out, however, that Myers has now testified that he did, in fact, know that there were always less than 50 employees at the Fort Dodge plant and that there were no other Tursso locations within 75 miles of the Fort Dodge plant. Tursso points out that Myers actually went further still, because he testified that he read the numerosity requirement on the FMLA rights poster and understood that it says that employees of the Fort Dodge plant are not eligible for FMLA leave.

Thus, Tursso contends that, even viewing the evidence in the light most favorable to Myers, no reasonable juror could find that Tursso made a misrepresentation that was unmistakably likely to mislead Myers into believing that he was eligible for FMLA leave.

***ii.*** ***Myers's response***. Myers responds that it is precisely Tursso's conduct that he contends was unmistakably likely to mislead employees at the Fort Dodge plant into believing that they were eligible for FMLA leave. He points out that Tursso created and

disseminated the Handbook to all employees and indicated that the Handbook stated the policies of the company. He also contends that the additional provisions of the Handbook that Tursso now cites should not change the court's conclusion that there is at least a fact question as to whether or not the Handbook was unmistakably likely to mislead Fort Dodge employees into believing that they were eligible for FMLA leave. Specifically, he argues that the statement in the Handbook that it is "not meant to cover everything" does not change anything, because that statement is still in the context of statements that the Handbook states the applicable policies and nowhere states that Fort Dodge employees are not eligible for FMLA leave. Myers also contends that he has now assembled evidence showing that the administrative assistant at the Fort Dodge plant charged with performing human resources responsibilities was instructed to and did counsel Fort Dodge employees about their FMLA rights and did assist some employees in applying for FMLA leave. He also rejects the notion that language indicating that the policies in the Handbook can be "changed by Tursso in its sole discretion" has any effect here, because Tursso never changed the FMLA policies in question. Myers also asserts that language explaining that the Handbook "is not intended to create a contract" is irrelevant here, when he is asserting a statutory claim and equitable estoppel of a contention that the statute is inapplicable.

Myers also disputes Tursso's contention that providing different contact numbers for Fort Dodge and St. Paul employees with human resources questions somehow is not silence with regard to differences in policies applicable to the two groups of employees. He points out, again, that the administrative assistant in Fort Dodge responsible for human resources matters was instructed to and did counsel Fort Dodge employees about their FMLA rights and did assist some employees in applying for FMLA leave. Thus, he contends that, even if employees in the two plants used different telephone numbers to inquire about leave for prolonged absences, Fort Dodge employees would have been led

to believe that they were eligible for FMLA leave and, furthermore, that evidence of the advice Fort Dodge employees actually received about FMLA leave did actually lead them to this belief.

Myers also argues that the FMLA rights poster may not, standing alone, have amounted to a misrepresentation of eligibility for FMLA leave, but that the poster did reasonably reinforce the belief that Fort Dodge employees were eligible for FMLA leave, where Tursso did nothing to suggest that Fort Dodge employees were not eligible for such leave.  He points out that some Fort Dodge employees did, in fact, get pregnancy leave or intermittent leave for health problems.  Thus, he contends that evidence that Tursso gave other Fort Dodge employees rights provided by the FMLA is evidence that Tursso unmistakably misled employees into believing that Tursso provided FMLA leave to Fort Dodge employees.[3]

### b. Analysis

*i.* ***The court's prior analysis.***  In *Myers I*, this court explained that the standard on the "misrepresentation" element of an equitable estoppel claim is not whether the employer made an explicit promise to a particular employee, but whether "'the defendant[] ha[s] engaged in "affirmative conduct . . . that was designed to mislead or was unmistakably likely to mislead a plaintiff."'"  496 F. Supp. 2d at 997 (quoting *Redman v. U.S. West Business Resources, Inc.*, 153 F.3d 691, 695 (8th Cir. 1998) (FLSA case), in turn quoting *Bell v. Fowler*, 99 F.3d 262, 268-69 (8th Cir. 1996), in turn quoting *Garfield v. J.C. Nichols Real Estate*, 57 F.3d 662, 666 (8th Cir. 1995), and citing *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1329 (8th Cir. 1995)).  This court then found

---

[3]Tursso's reply—and, indeed, its oral arguments—focused on the "reliance" elements of equitable estoppel, rather than the "misrepresentation" element.

evidence that it considered sufficient, at the very least, to generate genuine issues of material fact that Tursso's conduct was "unmistakably likely to mislead a plaintiff" into believing that employees at Tursso's Fort Dodge location were covered by the FMLA:

> The Personnel Policies Handbook begins with a representation from the CEO of the company that the "handbook has been assembled to provide you with pertinent company information regarding rules, policies, and benefits." Plaintiff's Appendix at 1. A reasonable factfinder could find that such a statement is unmistakably likely to mislead a plaintiff into believing that he or she is covered by each of the policies described in the Personnel Policies Handbook. Moreover, the Personnel Policies Handbook then states, in pertinent part, that "Tursso Companies' FMLA policy complies with [the FMLA]." Plaintiff's Appendix at 11. The Personnel Policies Handbook specifies, further, what employees are "eligible" for FMLA leave, based on their period of employment and hours worked in the preceding year, but contains no explicit exclusion of employees at the Fort Dodge location. A reasonable factfinder could conclude that these statements in the Personnel Policies Handbook, in the absence of any express limitations, were unmistakably likely to mislead an employee into believing that only his or her period of employment and hours worked were required to qualify for FMLA leave under Tursso's policy. Also, a reasonable factfinder could conclude that Tursso's silence on the question of whether employees at one location were entitled to benefits that employees at another location were not, when Tursso contends that it actually distinguished between employees in St. Paul and Fort Dodge with regard to FMLA leave, was likely to mislead employees in Fort Dodge into believing that they were also covered by the policies laid out in the Personnel Policies Handbook. *Cf. Kosakow*, 274 F.3d at 725 (finding that the employer's silence about an employee's eligibility for FMLA leave in the face of the employee's announcement of intent to take such leave, amounted to a misrepresentation upon which equitable estoppel

could be based). Taken together, a reasonable factfinder could
find that these statements were likely to mislead an employee
of Tursso at the Fort Dodge location into believing that Tursso
is covered by the FMLA and that employees at the Fort Dodge
location are eligible for FMLA leave if they meet the period of
employment and hours worked requirements. Such a
conclusion would not be *required* on the present record,
however, so that the court cannot find that Myers has proved
this element of his equitable estoppel claim beyond dispute.

*Myers I*, 496 F. Supp. 2d at 998 (emphasis in the original). Tursso now asks the court to

revisit this conclusion and to find, on a more complete record, that, as a matter of law,

Tursso engaged in no conduct that was "unmistakably likely to mislead" Fort Dodge

employees, including Myers, into believing that they were eligible for FMLA leave.

       ***ii.***     ***Analysis of the employer's conduct***. The court cannot find that the additional

evidence that Tursso has now marshaled proves, beyond dispute, that Tursso made no

misrepresentations unmistakably likely to mislead Fort Dodge employees into believing

that they were eligible for FMLA leave. First, Tursso suggests that, in its prior ruling,

the court did not properly recognize that the employer must take actions that *the*

*employer* should unmistakably have understood would cause the employee to change his

or her position, citing *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1329 (8th Cir.

1995). Although the court does not agree that it failed to apply the proper standard,

considering the employer's conduct from the employer's perspective, the court now

concludes that *an employer* should understand that, if it represents that certain policies are

applicable to *all* of its employees, *all* of its employees are unmistakably likely to be led to

believe that the policies apply to them. *Myers I*, 496 F. Supp. 2d at 997 (the standard is

whether "'the defendant[] ha[s] engaged in "affirmative conduct . . . that was designed to

mislead or was unmistakably likely to mislead a plaintiff"'") (quoting *Redman*, 153 F.3d

at 695). The provisions of the Handbook cited by the court are such that Tursso should have understood that those provisions were unmistakably likely to lead *all* of its employees, at either Fort Dodge or St. Paul, to believe that they were eligible for FMLA leave.

  ***iii. Effect of silence***. Tursso's contention that silence will not constitute a misrepresentation in the absence of a duty to speak also fails to carry the day here, because where an employer actually intends to or claims that it actually does apply certain policies only to *certain* of its employees, as a matter of equity, that employer has a duty to give notice of the employees to whom those policies do or do not apply. *Cf. Kosakow,* 274 F.3d at 725 (finding that the employer's silence about an employee's eligibility for FMLA leave in the face of the employee's announcement of intent to take such leave, amounted to a misrepresentation upon which equitable estoppel could be based). Indeed, Myers has now pointed to evidence sufficient to generate genuine issues of material fact as to whether Tursso did, in fact, differentiate between St. Paul and Fort Dodge employees with regard to FMLA leave. Such evidence includes evidence that the administrative assistant in Fort Dodge responsible for human resources matters was instructed to and did counsel Fort Dodge employees about their FMLA rights and did assist some employees in applying for FMLA leave.

  The court also finds that a reasonable factfinder could reject Tursso's contention that, by providing different telephone numbers for Fort Dodge and St. Paul employees calling in about anticipated prolonged absences and leave policies, Tursso somehow "spoke up" about differences in the applicability of its FMLA policy to those groups of employees. Providing local contact numbers is a remarkably vague way of indicating differences in applicability of policies to employees at different worksites, particularly where the employer has made representations that a reasonable factfinder could conclude

unmistakably indicated that *all* employees, at both of its worksites, are subject to certain policies.[4]

    *iv.    **Effect of additional Handbook provisions***.  The court finds, further, that the additional provisions of the Handbook to which Tursso now points do nothing more than provide inferences favorable to Tursso—if, indeed, they do that much.  The court doubts that any reasonable factfinder could *only* conclude that such weak disclaimers as statements that the Handbook "is not meant to cover everything," that the policies described therein can be "changed by Tursso in its sole discretion," that the "policies and procedures may be changed or modified, revoked or suspended by the company at any time," and that the Handbook "is not intended to create a contract" dispel the unmistakable impression from the statements cited by the court in its prior ruling that Tursso provided *statutorily mandated leave* to all of its employees.  This is particularly true, where Tursso took no steps to clarify what it says it considered a key limitation in the applicability of FMLA leave (where the employee worked) after a blanket statement that Tursso complied with the FMLA and described certain eligibility requirements for FMLA leave, Tursso made no changes in the pertinent statement of its policies, and no contract rights are at issue in the availability of FMLA leave.

    Similarly, the fact that the court found that certain inferences favorable to Myers's reading of the Handbook were not *required* does not necessarily mean that the Handbook is not *unmistakably* likely to mislead Tursso's Fort Dodge employees concerning their

---

[4]The situation might be different if, for example, Tursso had listed different contact numbers for employees at the two worksites after a statement such as the following:  "This Handbook provides an overview of all policies that may be applicable to Tursso employees.  However, different policies may apply to employees at St. Paul and Fort Dodge worksites.  Please contact Human Resources to determine which policies do or do not apply to you."

eligibility for FMLA leave as a matter of law, as Tursso now contends. Tursso's position mistakenly assumes that the "unmistakably likely to mislead" standard can never be subject to genuine issues of material fact, so that it either is or is not met as a matter of law. In the court's view, however, whether certain statements are "unmistakably likely to mislead" is precisely the sort of question that is subject to the inferences to be drawn from the totality of the circumstances in which the statements are made. On the present record, those inferences do not weigh only one way, so the question should be submitted to a factfinder.

      *v.*      ***Effect of the FMLA rights poster***. Next, Tursso contends that, in its prior ruling on Myers's Motion For Partial Summary Judgment, the court improperly considered the effect of the FMLA rights poster, because the court concluded that the FMLA rights poster would not eliminate any likelihood that employees would be misled. Tursso argues that the court used the wrong standard, because the standard is not whether an employer's conduct eliminates any likelihood that an employee would be misled, but whether an employer took affirmative action that is *unmistakably likely to mislead* an employee. The court does not find this argument persuasive. In its prior ruling, in concluding that the FMLA rights poster would not eliminate any likelihood that Fort Dodge employees would be misled about their eligibility for FMLA leave, because the poster properly stated the employee-numerosity requirement, the court was responding to *Tursso's* prior argument that the poster eliminated any likelihood that employees would be misled. *See Myers I*, 496 F. Supp. 2d at 998. In contrast, the court properly relied on evidence of *affirmative statements* by Tursso in its Handbook about eligibility for FMLA leave and *silence* by Tursso about the distinction Tursso purportedly made between employees at the St. Paul and Fort Dodge plants as to eligibility for FMLA leave as generating genuine issues of material fact as to whether Tursso had engaged in conduct unmistakably likely to mislead

Fort Dodge employees into believing that they were eligible for FMLA leave. *See id.* In other words, in concluding that there were genuine issues of material fact on the "misrepresentation" element, the court applied the proper standard. *See Redman*, 153 F.3d at 695 (the question on the "misrepresentation" element is whether "the defendant[] ha[s] engaged in affirmative conduct . . . that was designed to mislead or was unmistakably likely to mislead a plaintiff") (internal quotation marks and citations omitted).

Finally, again in the context of Tursso's prior argument that the FMLA rights poster properly stating the employee-numerosity requirement eliminated any inference of misrepresentation of eligibility for FMLA leave, the court concluded that "[i]t is simply not reasonable nor equitable to assume that an employee will necessarily know how many employees an employer has within 75 miles of the worksite, or that an employee would be under any obligation to investigate whether the employee-numerosity requirement was met, in the face of a statement in a personnel policies handbook that is likely to mislead an employee into believing that the employer is covered by the FMLA." *Myers I*, 496 F. Supp. 2d at 998. The court reiterates that conclusion here. Tursso's present contention—that Myers has now testified in deposition that he did, in fact, know that there were always less than 50 employees at the Fort Dodge plant, that he knew that there were no other Tursso locations within 75 miles of the Fort Dodge plant, and that he read the employee-numerosity requirement on the poster and understood it to say that employees of the Fort Dodge plant are not eligible for FMLA leave—goes to whether or not Myers actually relied on differing statements of eligibility in the Handbook, not to whether Tursso's statements in the Handbook misrepresented the eligibility of Fort Dodge employees to FMLA leave. *See id.* at 996-97 (to estop an employer from asserting the employee-numerosity requirement of the FMLA, an employee would have to establish the following elements: (1) the party to be estopped made a misrepresentation of fact to the

other party with reason to believe that the other party will rely upon it; (2) the other party reasonably relied upon the misrepresentation; and (3) that other party did so to his or her detriment). Therefore, the court will consider the impact of Myers's deposition testimony on these points in its analysis of other elements of his equitable estoppel claim.

*vi.* *Summary*. Although the court has now been presented with a more complete record, the court once again concludes that Myers has generated genuine issues of material fact that Tursso misrepresented his eligibility for FMLA leave, so that Tursso is not entitled to summary judgment on the basis of Myers's inability to establish the "misrepresentation" element of his equitable estoppel claim.

## 2. *Reasonable reliance*

### a. *Arguments of the parties*

*i.* *Tursso's opening argument*. Turning to the second element of Myers's equitable estoppel claim, "reasonable reliance," Tursso contends that Myers has now admitted in his deposition that he was *not* relying on Tursso in any way in making his decisions regarding medical care and returning to work and was not thinking about the FMLA or relying on the FMLA when he was absent from work in December of 2006 and January 2007. Tursso points out that Myers has also admitted that, by the end of his employment, it had been years since he looked at Tursso's Handbook, and that when he had looked at it, he had only skimmed through it. Tursso also argues that Myers has now testified that he was sure he read the provision on the FMLA rights poster that properly stated the employee-numerosity requirement, that he knew that there were always less than 50 employees at the Fort Dodge plant, and that he knew that there were no other Tursso facilities within 75 miles of the Fort Dodge plant. Tursso also argues, albeit in reference to the "misrepresentation" element, that Myers admitted that he understood that the employee-numerosity requirement stated in the FMLA rights poster meant that Fort Dodge

employees were not eligible for FMLA leave. Thus, Tursso contends that, in light of this evidence, no reasonable factfinder could conclude that Myers relied at all, let alone reasonably, on any alleged misrepresentations by Tursso that he was eligible for FMLA leave.

  ***ii. Myers's response.*** Myers contends that he did rely on Tursso's misrepresentations about his eligibility for FMLA leave, because he believed that his medical leave was protected, he obtained a medical release from his doctor, and he returned to work at the time specified in that release. Contrary to Tursso's present contentions, Myers points out that he knew that the FMLA was part of the Handbook and that he was relying on the Handbook, even though he admitted that he was not really thinking about the FMLA at the time of his illness. Moreover, he contends that he assumed that everything was "fine" with his job, because he was ill and he was hospitalized for that illness. He also contends that the proper timeframe to consider is not when he was ill, but when he attempted to return to work, including his efforts to ensure that he could return to work by keeping his employer apprised of his medical condition and treatment. He also contends that he sought, and initially was told that he was entitled to, short-term disability leave payments, although no such payments were ultimately made. Next, he argues that he actually did return to work pursuant to his doctor's orders, at his normal time and by reporting to his usual supervisor, even though he was, at first, assigned only light duties. Finally, he contends that he reasonably relied on the availability of FMLA leave, because he believed that other Fort Dodge employees had been given the protection that the FMLA provides.

  ***iii. Tursso's reply.*** In its reply, Tursso contends that Myers has previously admitted that he was relying only on the Handbook and the FMLA rights poster, and that such an admission is still binding. Therefore, Tursso contends that Myers cannot now

assert that he was also relying on his belief that other Fort Dodge employees had been granted FMLA leave.

*iv.* ***The parties' oral arguments***. At the oral arguments, Tursso argued, further, that Myers could not, as a matter of law, establish reasonable reliance on any purported misrepresentation, because he had negligently failed to use means available to him to determine the truth of the matter of his FMLA eligibility, citing *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59 n.10 (1984). More specifically, Tursso argued that, with reasonable diligence, Myers could have found out from the Handbook's reference to the FMLA rights poster and the FMLA rights poster itself that he was not eligible for FMLA leave, because Tursso did not meet the employee-numerosity requirement at the Fort Dodge plant. Indeed, Tursso reiterated that Myers now admits that he did actually read the FMLA rights poster and understood it to mean that there were not enough employees at or within 75 miles of the Fort Dodge plant for Fort Dodge employees to be eligible for FMLA leave.

Myers responded that an employee would have needed remarkable sophistication to understand that the representations in the Handbook about eligibility for FMLA leave were tempered or limited by information in the FMLA rights poster. He argues that the convoluted chain of further inquiries and inferences on which Tursso relies—from the Handbook to the FMLA rights poster to the conclusion that Myers was negligent in not understanding that he was ineligible for FMLA leave because of the employee-numerosity requirement—is a far cry of what the Supreme Court intended by referring to a "reasonable diligence" standard for acquiring correct information.

***b.  Analysis***

***i.  The court's prior analysis***.  In the circumstances presented here, the second element of equitable estoppel requires proof that the party asserting estoppel "reasonably relied upon the [other party's] misrepresentation." *Myers I*, 496 F. Supp. at 996.  In its prior ruling, the court noted that Myers's assertion of reasonable reliance was "problematic," because Myers did not plan an absence in the expectation that he would be eligible for FMLA leave.  *Id.* at 999.  The essence of the court's analysis of the "reliance" element in *Myers I*, however, was the following:

> In *Duty,* the Eighth Circuit Court of Appeals inferred that the plaintiff employee did rely on the amount of leave time designated by his employer, because the employee contacted the human resources coordinator the day immediately following the end of his FMLA leave as designated in the employer's letter; in other words, the court inferred an employee's reliance on FMLA leave from compliance with the employer's representations concerning FMLA leave.  *See Duty,* 293 F.3d at 494.  Similarly, here, a reasonable factfinder could infer from evidence that Myers attempted to return to work, with a doctor's slip, that Myers relied on the availability of FMLA leave and the right to return to his prior or an equivalent job at the conclusion of his leave.

*Myers I*, 496 F. Supp. 2d at 1000.  The court then concluded that the evidence in question was not sufficient to prove the element beyond dispute, so that Myers was not entitled to summary judgment on his equitable estoppel claim, or even on this element, in light of evidence identified by Tursso, including evidence that Myers failed to follow the FMLA leave policy as outlined in the Handbook, which reasonably suggested that Myers had not relied on the Handbook's statements concerning FMLA leave.  *Id.*

***ii.  Analysis on the present record***.  On the present record, the court finds that Myers's contention that he relied on alleged misrepresentations by Tursso about his

eligibility for FMLA leave is again "problematic," but for a different reason this time. What makes Myers's reliance "problematic" at this point in the litigation is that he has admitted that he actually understood the statement of the employee-numerosity requirement in the FMLA rights poster to mean that Tursso's employees at Fort Dodge were not eligible for FMLA leave, because he knew that the Fort Dodge plant did not have 50 employees and that Tursso had no other facility within 75 miles. That being so, it is difficult to see how Myers could have reasonably relied on statements in the Handbook apparently suggesting that he was eligible for FMLA leave.

Myers attempts to overcome this problem by asserting that he believed that other employees at Fort Dodge had been given medical or family leave, for example, for intermittent absences owing to their own health problems or because of the birth of a child, notwithstanding that Fort Dodge employees appeared not to be eligible for FMLA leave based on the FMLA rights poster. Tursso contends that the problem with this new contention is that Myers has admitted that he is only relying on misrepresentations in the Handbook and the FMLA rights poster, not on his perception that other employees at Fort Dodge received what appeared to be FMLA leave.

The court notes that Myers's belief that other employees received what appeared to be FMLA leave is *not* reliance on any *misrepresentation* by Tursso. *Id.* at 996 (the party asserting estoppel "reasonably relied upon the [other party's] misrepresentation"). The court also acknowledges that Myers has admitted that Tursso did not make any representations to him about FMLA leave other than those in the Handbook and the FMLA rights poster. Even now, Myers does *not* assert that he was actually counseled that he was eligible for FMLA leave by Ms. Litwiller, the administrative assistant at the Fort Dodge plant charged with providing human resources information, so that there are no statements

by Ms. Litwiller that could be deemed misrepresentations to Myers, attributable to Tursso, on which Myers claims to have relied.

That is not the end of the matter, however, because the court does not believe that Myers is asserting that he *relied* on his belief that other Fort Dodge employees had received medical or family leave in circumstances comparable to his, in addition to relying on statements in the Handbook and the FMLA rights poster. Rather, the court reads Myers's argument to be that his belief that other Fort Dodge employees had received medical or family leave in circumstances comparable to his own, notwithstanding what the FMLA rights poster said about the employee-numerosity requirement, made his reliance on the statements in the Handbook about eligibility for FMLA leave (or at least medical leave) *reasonable*. A reasonable factfinder could conclude that an employee's reasonable belief that other employees have received leave in comparable situations would make it reasonable for that employee to rely on statements in a Handbook that appeared to represent that employees at his worksite were eligible for FMLA leave.

Problems remain with Myers's showing of reasonable reliance, however, because Tursso points out that Myers has also admitted that, by the end of his employment, it had been years since he looked at Tursso's Handbook, and when he had looked at it, he had only skimmed through it. Thus, Tursso contends that Myers was not relying on any of the statements in the Handbook to which Myers and the court have since pointed. Myers counters that he knew that the FMLA was part of the Handbook, that he was relying on the Handbook, and that he believed the Handbook said medical leave was protected, even though he admitted that he was not really thinking about the FMLA at the time of his illness. The court finds that the evidence to which Myers now points, coupled with the evidence on which the court previously relied—evidence that Myers attempted to return to work, with a doctor's slip, at the time his doctor released him to work—is sufficient,

although perhaps just barely, to generate genuine issues of material fact that Myers relied on the availability of FMLA leave and the right to return to his prior or an equivalent job at the conclusion of his leave. *See id.* at 1000 (citing *Duty,* 293 F.3d at 494, in which the court held that an employee did rely on the amount of leave time designated by his employer, because the employee contacted the human resources coordinator the day immediately following the end of his FMLA leave as designated in the employer's letter).

Tursso's reliance at oral arguments on the "reasonable diligence" standard in *Heckler*, 467 U.S. at 59 n.10, does not change that conclusion. In *Heckler*, the Supreme Court explained that "reasonable reliance" requires a showing that "the party claiming estoppel did not know nor should it have known that its adversary's conduct was misleading." *Heckler*, 467 U.S. at 59. The Supreme Court then quoted the following with approval:

> "The truth concerning these material facts must be unknown to the other party claiming the benefit of the estoppel, not only at the time of the conduct which amounts to a representation or concealment, but also at the time when that conduct is acted upon by him. If, at the time when he acted, such party had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation or concealment." [3 J. POMEROY, EQUITY JURISPRUDENCE] § 810, at 219 [(S. Symons ed. 1941)] (footnote omitted).

*Heckler*, 467 U.S. at 59 n.10. Tursso argued at oral arguments that, with reasonable diligence, Myers could have found out from the Handbook's reference to the FMLA rights poster and the FMLA rights poster itself that he was not eligible for FMLA leave, because Tursso did not meet the employee-numerosity requirement at the Fort Dodge plant. This

argument is insufficient to prove that Myers cannot establish reasonable reliance as a matter of law, however, because it amounts to little more than a reincarnation of Tursso's prior argument that the FMLA rights poster would have eliminated any likelihood that Fort Dodge employees would be misled about their eligibility for FMLA leave, because the poster properly stated the employee-numerosity requirement. *See Myers I*, 496 F. Supp. 2d at 998. Tursso now repackages the argument to be that Myers was negligent in not understanding that the employee-numerosity requirement in the FMLA rights poster meant he was not eligible for FMLA leave. This court rejected the argument, in its original form, and now rejects it in its latest form, on the ground that "[i]t is simply not reasonable nor equitable to assume that . . . an employee would be under any obligation to investigate whether the employee-numerosity requirement was met, in the face of a statement in a personnel policies handbook that is likely to mislead an employee into believing that the employer is covered by the FMLA." *Id.* To put it another way, the record now shows that Myers had a reasonable basis to believe that Tursso provided FMLA leave to Fort Dodge employees—including, for example, evidence that other Fort Dodge employees had received leave in comparable situations—notwithstanding that Tursso did not meet the employee-numerosity requirement at its Fort Dodge plant, so that Tursso has not established that the undisputed facts show a lack of "diligence" to learn the truth on Myers's part that would torpedo his equitable estoppel claim on the "reasonable reliance" element as a matter of law.

Therefore, Tursso is not entitled to summary judgment on Myers's equitable estoppel claim on the ground that Myers cannot generate genuine issues of material fact on the "reasonable reliance" element.

### 3. Detrimental reliance

#### a. Arguments of the parties

*i. Tursso's opening argument.* Although Tursso did not do so last time around, Tursso now expressly challenges Myers's ability to generate genuine issues of material fact on the last element of Myers's equitable estoppel claim, "detrimental reliance." Indeed, Myers's inability to show "detrimental reliance" was the thrust of Tursso's oral argument. In both its opening brief Tursso argues—and argued again at the oral arguments—that, even assuming that Myers reasonably relied on the alleged misrepresentations, there is no evidence that Myers relied to his detriment on those alleged misrepresentations. More specifically, Tursso argues that there is no evidence that Myers changed his position based on the alleged misrepresentations, where he has not shown that he would have done anything different if the circumstances had been different. Although Tursso acknowledges that Myers's situation is unfortunate, Tursso nevertheless asserts that Myers would have found himself in that situation even if Tursso had not mentioned the FMLA in its Handbook. In response to the court's brief comment concerning evidence on this element in its prior ruling, Tursso argues that Myers's return to work from unpaid leave is not a change of position for the worse, because there is no evidence that Myers would have done anything different prior to being terminated.

*ii. Myers's response.* Myers contends that he complied with the requirements of the Handbook for notifying Tursso of the reasons for his absence during his illness in December 2006 and thereby also complied with the minimal requirements for giving notice of a need for FMLA leave. He contends that, despite his notice to Tursso of his serious medical condition, Tursso never required him to provide medical certification or notified him that he was ineligible for FMLA leave. Myers contends that, because he relied on medical leave and protection of his job, he did not start looking for a job until after he was

terminated on January 8, 2007.  Although he acknowledges that conducting a job search from the hospital would have been difficult, he asserts that he could have done something to start looking for other employment.  Indeed, at the oral arguments, he asserted that Tursso has admitted that he lost his job because of his serious health condition, which is sufficient to show that he relied to his detriment on representations that he was eligible for FMLA leave, because the FMLA would have protected his right to return to his job.  He also contends that, if he had known he was not eligible for FMLA leave, he would not have suffered through the menial tasks to which he was assigned upon his return to work or the embarrassment of a discharge meeting.  He also contends that he could have resigned, instead of waiting to be fired, to improve his position with regard to future employment or benefits following termination.

     ***iii.***    ***Tursso's reply***.  In its reply, Tursso asserts that whether particular circumstances constitute a detriment is a legal question properly decided on summary judgment.  Tursso also contends that Myers has cited no *evidence* to support his assertion that he would have started a job search earlier, if he had known that he did not have FMLA leave for his absences in December 2006 and January 2007 and, instead, simply relies on conclusory *post hoc* assertions.  Indeed, at the oral arguments, Tursso argued that the record shows that Myers knew that his job was "in jeopardy" after he received a "corrective action" notice concerning his absences on December 4, 2006, so that he could have started a job search at that time.  Tursso also rejects Myers's contention that he relied to his detriment by obtaining a medical release and returning to work, because Tursso contends that Myers did not change his position to do so and, in fact, got paid for the time he worked on January 8, 2007, as well as for vacation time accrued from January 1, 2007, so that he suffered no detriment by returning to work.  Tursso next argues that it is ironic for Myers to assert that he relied to his detriment on the representations about FMLA

leave, because he suffered through a menial job assignment and a discharge meeting, when he is now complaining that his job was wrongfully taken from him. Tursso also contends that there is no evidence that Myers "suffered" upon his return to work, because he was told to do whatever he liked and was paid for his time, and mere bruised ego or hurt feelings do not constitute detrimental reliance. Next, Tursso contends that there is no evidence that Myers was prevented from resigning or that Tursso would not have accepted his resignation and, furthermore, that there is no evidence that Myers's termination has prevented him from obtaining other employment or caused him to receive less favorable treatment under any ERISA plan or other employment benefit program than he would have received if he had resigned. Thus, Tursso argues that Myers's assertions of detrimental reliance are unsupported and speculative.

### b.    Analysis

The final element of an equitable estoppel claim, in this context, is that the party asserting estoppel relied on the other party's misrepresentations to his or her detriment. *Myers I*, 496 F. Supp. 2d at 996-97.[5] The Fifth Circuit Court of Appeals explained this

---

[5] Tursso contends that whether particular circumstances constitute a detriment is a legal question properly decided on summary judgment, but the court finds that the cases upon which Tursso relies do not stand for that proposition. Rather, they stand for the proposition that certain alleged detriments were insufficient or unsupported by the evidence as a matter of law. *See, e.g., Olsen v. United States*, 952 F.2d 236, 242 (8th Cir. 1991) (holding that there was "no substance" to the plaintiff's claim of detrimental reliance, because he could not have taken the action he asserted he would have taken had he not relied on certain representations, and had he tried to do so, he would only have exacerbated his problems, not solved them, so that he had not proved a claim of estoppel as a matter of law). Thus, while the sufficiency of a claimed detriment may be amenable to summary judgment, it does not follow that the sufficiency of a claimed detriment is necessarily a question of law. *See Minard v. ITC Deltacom Comms., Inc.*, 447 F.3d 352,

(continued...)

requirement to mean that "the party claiming the estoppel must have relied on its adversary's conduct 'in such a manner as to change his position for the worse.'" *Minard v. ITC Deltacom Comms., Inc.*, 447 F.3d 352, 358 (5th Cir. 2006) (quoting *Heckler . Community Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 59 n.9 (1984), in turn quoting 3 J. POMEROY, EQUITY JURISPRUDENCE § 805, p. 192 (S. Symons ed. 1941)).

The Fifth Circuit Court of Appeals held that a plaintiff generated genuine issues of material fact, at the very least, on the "detrimental reliance" element, where the plaintiff took leave for which FMLA coverage was ultimately denied, but the plaintiff pointed to evidence that there were other medical alternatives available to address her serious medical condition and those alternatives would have enabled her to be treated safely without taking immediate leave, if her employer had not misrepresented her eligibility for FMLA leave. *Id.* at 359. Similarly, the Second Circuit Court of Appeals held that a plaintiff generated genuine issues of material fact on the "detrimental reliance" element where the plaintiff took leave for which FMLA coverage was ultimately denied, but the plaintiff would have been able to wait to take medical leave until she had worked enough hours to be eligible for FMLA leave, if the employer had not misrepresented the plaintiff's present eligibility for FMLA leave. *See Kosakow*, 274 F.3d at 725 (finding "[t]here can be little doubt" that the plaintiff raised genuine issues of material fact on the detrimental reliance element of her claim that her employer was equitably estopped to assert that she was not eligible for FMLA leave, because she testified that, had she been told that she needed a certain number of work hours to be eligible, she would have worked those hours before scheduling her

---

[5](…continued)

359 (5th Cir. 2006) (finding genuine issues of material fact on the "detrimental reliance" element of an equitable estoppel claim seeking to estop an employer from asserting that an employee was not "eligible" for FMLA leave).

surgery, and she was less than 50 hours short of the requirement at the time that she took leave). Here, however, Myers has not suggested that he had any alternatives to his immediate hospitalization for his meningitis and encephalitis, had he known he was not eligible for FMLA leave. Thus, he has not shown a change of position for the worse based on misrepresentations about his eligibility for FMLA leave. *Minard*, 447 F.3d at 358 (defining detrimental reliance as a change of position for the worse in reliance on the other party's conduct).

Myers nevertheless contends that he relied to his detriment on his eligibility for FMLA leave, because he lost his job as the result of absences for a serious illness. He contends that Tursso does not dispute that he was fired because of his absences for meningitis and encephalitis. Proof that an employee was fired for absences owing to a serious illness would certainly establish an FMLA violation, *if the employee was eligible for FMLA leave*. *See, e.g., Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006) ("An employee can prevail under an interference theory if he was denied substantive rights under the FMLA for a reason connected with his FMLA leave."). However, to establish equitable estoppel to assert ineligibility for FMLA leave, the employee must show, *inter alia*, that he or she relied to his or her detriment *on misrepresentations about his or her eligibility for FMLA leave*. *See Myers I*, 496 F. Supp. 2d at 996-97. Myers's loss of his job, while certainly a detriment, was not a detriment arising from his reliance on misrepresentations about his eligibility for FMLA leave, but a detriment arising from his absences, and he had no choice but to be absent. *Compare Minard*, 447 F.3d at 358 (the employee detrimentally relied on representations that she was eligible for FMLA leave, because she would not have taken leave, if properly advised that she was not eligible for FMLA leave); *Kosakow*, 274 F.3d at 725 (same). In other words, the record does not show that Myers changed his position with respect to taking the absences that led to his

termination in reliance on receiving FMLA protection for his absences, so his termination arising from those absences was not a detriment from reliance on misrepresentations about his FMLA eligibility. *Id.* (detrimental reliance requires a change of position for the worse based on the other party's misrepresentations).

Myers also contends that he relied to his detriment on his eligibility for FMLA leave, because he was prevented from starting his job search sooner. As Tursso points out, in a case involving an employee's claim that his employer was equitably estopped to assert that it had not promised to help him find other employment upon closing his office, the Fifth Circuit Court of Appeals held that loss of two months' worth of job hunting "is not the type of 'injustice' that equitable [estoppel] was intended to redress." *Crenshaw v. General Dynamics Corp.*, 940 F.2d 125, 128 (5th Cir. 1991). Similarly, this court finds that Myers's loss of at most three weeks' worth of job hunting—when the record shows that Myers could not realistically have undertaken any job hunting at all for much of that time because of health problems—is not, as a matter of law, the sort of "detriment" that will sustain an equitable estoppel claim.

Furthermore, the court also finds that no reasonable factfinder could conclude that Myers's supposed embarrassment over being given "menial" light duties upon his return to work, or the embarrassment of being subjected to a discharge meeting, both of which could have been avoided had he not attempted to return to work, are sufficient "detriments." There is no substance to Myers's claims of "detriment" from embarrassment about the tasks to which he was assigned, where he elsewhere asserted that he wanted to return to work, even for half days, and could not perform his usual duties. *See, e.g., Olsen v. United States*, 952 F.2d 236, 242 (8th Cir. 1991) (finding that the employer was entitled to judgment as a matter of law on an employee's equitable estoppel claim where there was "no substance" to the employee's claim of detrimental reliance).

The court finds that the embarrassment that Myers claims that he suffered as the result of being subjected to a discharge meeting is also too inconsequential, as a matter of law, to amount to the sort of "detriment" resulting from reliance on misrepresentations about eligibility for FMLA leave necessary to sustain an equitable estoppel claim. This is so, because Myers admits that he had been warned repeatedly about problems with his attendance and he admits that he knew that his job was in jeopardy after he received the December 4, 2006, "corrective action" notice about his attendance problems. Moreover, Tursso is correct that mere bruised feelings are rarely actionable, where the claimant can show no other detriment from a misrepresentation. *See, e.g., Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1290 (11th Cir. 2002) (fraudulent misrepresentation case in which the court observed, "[T]he law does not protect the sensibilities of those fragile enough to suffer severe emotional trauma from being told lies that do not actually operate to their detriment."). Finally, Myers has not shown that he suffered any negative impact on his ability to find a job or any negative impact on benefits he received because he was terminated instead of resigning. *Compare Hillis v. Waukesha Title Co., Inc.*, 576 F. Supp. 1103 (D. Wis. 1983) (the defendant relied to his detriment, where he would not have given notice of his intent to leave, if he had known that he risked forfeiture of his pension benefits by resigning).

Thus, the court concludes that, despite Myers's ability to generate genuine issues of material fact on the other elements of his equitable estoppel claim, he has not, as a matter of law, provided any "substance" to his contentions that he suffered a detriment in reliance on Tursso's misrepresentations as he must to avoid summary judgment on his equitable estoppel claim. *See Olsen*, 952 F.2d at 242 (judgment as a matter of law was appropriate when there was "no substance" to the plaintiff's claim of detrimental reliance); *see generally Celotex*, 477 U.S. at 322 (if a party fails to make a sufficient showing to

generate a genuine issue of material fact on an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law"); *In re Temporomandibular Joint*, 113 F.3d at 1492 (same).[6]

## III. CONCLUSION

Myers's claim that Tursso must be equitably estopped to assert his ineligibility for FMLA benefits founders on Myers's inability to generate genuine issues of material fact on the "detrimental reliance" element of equitable estoppel, and Tursso is entitled to summary judgment on that claim. Myers admits that, in the absence of equitable estoppel, his FMLA claims are not viable, because it is undisputed that Tursso does not employ at least 50 employees at its Fort Dodge location or within 75 miles of that location, as required for Myers to be an "eligible" employee under the FMLA. *See* 29 U.S.C. § 2611(2)(B)(ii); *see also* 29 C.F.R. § 825.110(a)(3). Thus, Tursso is entitled to summary judgment on the entirety of Myers's Complaint.[7]

---

[6]Because Myers cannot, as a matter of law, establish that Tursso is equitably estopped to assert that he was ineligible for FMLA leave, and his FMLA claims thus fail, the court does not reach the question, also raised in Tursso's Motion For Summary Judgment, of whether Tursso is entitled to summary judgment on Myers's claim for liquidated damages under the FMLA.

[7]Upon the parties' joint motion, the court dismissed Myers's unpaid wages claim on April 17, 2007, in light of the parties' representation that the unpaid wages at issue had been paid in full. *See* Order (docket no. 7). Therefore, only Myers's FMLA claims remained at issue prior to this ruling.

THEREFORE, Tursso's November 29, 2007, Motion For Summary Judgment (docket no. 30) on the entirety of Myers's Complaint is **granted**. Judgment shall enter accordingly.

**IT IS SO ORDERED.**

**DATED** this 19th day of February, 2008.

_Mark W. Bennett_
_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA